Theo. H. Davies *v.* H. Hackfeld & Co.

## SUPREME COURT—IN BANCO.

### APRIL TERM—1878.

*Harris, C. J., Judd and McCully, J.J.*

Theo. H. Davies *vs.* H. Hackfeld & Co.

#### ON EXCEPTIONS.

A CONTRACT WAS MADE to sell defendants the clip of wool from the Island of Niihau, to be delivered about "the month of May, 1877;"
HELD, that the wool tendered in June, July and August was not a compliance with the contract.

Opinion of a majority of the Court by McCULLY, J.

This was an action of assumpsit on a contract to sell defendants the whole of the clip of wool from the Island of Niihau, estimated to be about 220,000 pounds, to be delivered in Honolulu about the month of May, 1877, in merchantable condition, at the price of 12¾ cents per pound net cash to be paid on delivery.

The clip amounted to 229,579 pounds, and was tendered in the following quantities at these several dates, viz.: May 26th, 59 bales; May 29th, 46 bales; June 19th, 53 bales; July 19th, 60 bales; July 5th, 53 bales; July 23d, 71 bales; and August 14th, 17 bales; of which the defendants received the two lots delivered in May and paid therefor on account $8,000.

The agreement under which so much was received, and the further dealings of the parties will appear from the following exhibits of correspondence and receipt:

Hackfeld & Co., to T. H. Davies, May 26, 1877: "When we purchased from you in January last the clip of Niihau wool for this year, we based our calculations for the purchase

Theo. H. Davies *v.* H. Hackfeld & Co.

price upon our knowledge of the quality of the wool, as we had received it in former years. But upon examination of the first lot of the clip which arrived yesterday per Marion, we found the wool extremely burry, very much more so than the former lots received, and the wool cannot be called 'in merchantable condition' as compared with the former clips. If it was only a little more burry than formerly we should not say anything about it, but the state the wool is in renders it quite a different class of wool from what we had a right to expect. We must, therefore, decline to receive the wool at the price agreed upon, but shall be ready to confer with you upon a fair reduction, if that is agreeable to Mr. Sinclair, as we suppose it will be, knowing the condition of the wool as regards the burs in it."

Hackfeld & Co. to T. H. Davies, May 29, 1877: "Referring to our respects of the 26th inst., in which we drew your attention to the extreme burry condition of the Niihau wool received ex Marion, and *refused to take delivery of the same* at the stipulated price, we now say that *in order to facilitate the transaction* we will receive said wool, but *with the express condition that we reserve all our rights growing out of its bad condition.* We trust that Mr. Sinclair will accede to a proper allowance in price and we are ready to make a sacrifice—in an amicable adjustment."

Receipt of T. H. Davies of June 8, 1877, for $8,000: "Received from Messrs. Hackfeld & Co. the sum of eight thousand dollars on account of wool delivered against their purchase of the Niihau clip. This payment is without prejudice to any legal right they may have in regard to said wool."

Hartwell, Attorney, to Davidson, Attorney, June 25, 1877: "Messrs. H. Hackfeld & Co. decline to accept any Niihau wool unless it be in better order than the lot already sent them (which they hereby offer to return, and request the money to be repaid them which they paid under protest): their reasons being as already stated, that the wool is so far

deteriorated, by reason of burs, from former clips of Niihau wool sold to them, that they regard the contract as not carried out on the part of the seller, and therefore they have rescinded the same."

Hartwell, Attorney, to Davidson, Attorney, June 27, 1877: "I am instructed by Messrs. H. Hackfeld & Co., to inform you, that apart from and in addition to the reasons already alleged by them for declining to receive Niihau wool in the condition of that already presented, they decline to receive more wool now, for the reason that the bargain and sale memorandum note required the wool to be delivered about the month of May, which has not, except the lots referred to in former letters, been done."

Hackfeld & Co., to T. H. Davies, August 16, 1877: "In reply to your letter of yesterday's date, we beg to say that we decline to pay your bill of $21,612.73, for 362 bales of wool, being this year's clip of the Niihau wool, for the reasons already fully set forth to you. We again call your attention to the fact that wool, which by this agreement was to be delivered to us about the month of May, is not until now, the middle of August, tendered, except as to the lot tendered and refused last June.

"We hereby decline to receive this wool for the reasons above referred to, and we request you at once to repay to us the amount of $8,000, (and $134, interest thereon), being the sum paid you by us June 8th last, without prejudice to our rights as then claimed to disavow the contract."

At the last January term, the view of Chief Justice Harris, holding the Court, was, that the defendants had finally refused to take any more wool than that which they had received, but that this had been accepted, although conditionally as to price. Evidence went to the jury that it was "in merchantable condition," and the jury was instructed that if they found that fact, as it was the only contract description of quality, they should give the plaintiff at 12¾ cents per pound for the

Theo. H. Davies *v.* H. Hackfeld & Co.

quantity delivered; that, admitting that the delay in delivery was not a breach of the contract, it was necessary for the plaintiff to prove his damages, and he had made no attempt to prove any, and that therefore none could be presumed, and their verdict as to damages must be only nominal; and that if they should find that the time had elapsed during which the wool was to be delivered, they could give no verdict at all, beyond what was remaining due on the wool delivered in May. Nevertheless the jury rendered a verdict for "the full amount of the contract as claimed," which has been taken to be a verdict for the sum of $25,000, claimed as damages in the plaintiff's complaint. This was set aside as excessive and contrary to the instructions of the Court, but with permission to the plaintiff to avoid a new trial if he should file a remittitur of all the damages above $695 ($8,695 being the amount of the wool delivered, at 12¾ cents, of which sum $8,000 had been paid), which the plaintiff did.

"Defendants' exceptions allowed at the trial, were as follows, viz.: To the instruction to the jury, that, 'if the wool is shown to have been merchantable, which is still held by the defendants, they are liable for the difference between the $8,000 paid and the agreed price, or $695, the evidence as to the holding of this wool being, that it is held under an agreement, as shown by the exhibits,' to the refusal of the Court to order a nonsuit on the following grounds, to wit: 1st. That the evidence did not show delivery or offer to deliver as agreed, the evidence being that it was tendered at the times and in the amounts above stated. 2d. That there was no evidence that the wool was in merchantable condition when tendered, the only evidence relied on by the plaintiff on that point being, the evidence of Mr. Sinclair. 3d. That there was no evidence of the market value of the wool at the time of the alleged breach of the agreement, it being true that there was no evidence on that point."

Upon the exceptions coming before the Court in Banco, it

was contended on the part of the plaintiff they are irregular because no exceptions were taken to the decision of the Chief Justice giving plaintiff the option to remit the excess above $695, or take a new trial, and that he, therefore, submitted to the action taken thereon, and that the plaintiff having reduced his verdict to $695, a new trial cannot now be had. But, although that course might have been followed, yet as defendants still stood on the exceptions they had taken on the refusal of the Court to order a nonsuit and would merely have repeated them, we consider this objection as going rather to a matter of form than of substance. The defendants then and now except to a verdict against them. The Court had already held with them that a verdict for $25,000 could not be given, and was bound to set that aside on mere motion, and the real matter in controversy which is the subject of appeal to the full Court is what the Justice holding the trial had refused.

The attention of the Court has been given mainly to the first ground of nonsuit, that the evidence did not show delivery or offer to deliver as agreed.

There is no dispute as to the fact in this particular: The several times of tender above cited, are stated by the plaintiff himself. They range from May 26th to August 14th. The agreed time was "about the month of May." We are all of opinion that this expression must be construed literally. It means a time not entirely included in the month of May, or the word "about" which is different in effect from "in," would not have its force. We should say that a contract to do something "about the month of May" would be satisfied by doing it in the latter part of April or the early part of June and at intermediate times, but we need not decide if all June or April might be included by the term "about" for the execution of this contract ran along to the middle of August, which plainly was not "about May." On the contract merely we do not see why a demurrer to the complaint as amended by the statement of times of tender of the wool, would not

have been good. But we have to consider how far the parties have placed themselves under other conditions by subsequent agreements, admission or conduct, a question which rests on the construction which shall be given to the letters and receipt exhibited above. Had the defendants waived the stipulation in respect to time of delivery as to the whole clip, had they accepted a part of it finally, or were they in a position at the last to renounce the whole contract and claim return of the payment of $8,000?

It should be mentioned that the memorandum of agreement, which is the basis of this action, includes also "not to exceed 1,000 bullock hides, to be delivered throughout the year," and "tallow from Niihau and elsewhere to be delivered throughout the year. All cash on delivery." From this the plaintiff's counsel argues that each shipment of wool was payable on delivery, and that parties had only pursued the contract by the payment of June 8th. But we are of opinion that the item of the clip of wool is to be treated as single and indivisible. It is sold as amounting to a certain estimated quantity. It is to be delivered at a specific time, "about May," which, although giving so much latitude of time, would permit the transport hither by successive trips of a schooner, contemplates the delivery of the whole without delay. The whole clip must be delivered to the defendants. In all these respects the agreement for the wool differs in terms from those respecting the hides and tallow. It follows from this view that the delivery of the wool was not made or tendered until the tender of the last lot on the 14th of August, and unless the parties had naturally consented to modify the terms of the original agreement or the defendants had waived their right to the execution of it as specified, there could be no claim for damages on a contract which the plaintiff had not fulfilled.

Was there such a modification of contract, amended contract, or waiver of terms?

Referring to the exhibits we find that the defendants on the

26th of May "decline to receive the wool at the price agreed upon." May 29th they write that they will receive the wool which they had refused to take delivery of at the stipulated price with the express condition that "we reserve all our rights growing out of its bad condition." June 8th they pay $8,000 on account, "without any prejudice to any legal right they may have in regard to said wool." On the 19th of June 60 bales are offered, and on the 25th of June defendants say they "decline *to accept any* Niihau wool unless it be in better order than the lot already sent, which they offer to return and request the money to be repaid them which they paid under protest," and say they have rescinded the contract. June 27th they decline to receive more wool now on the ground, not only of failure in quality, but because of non-delivery within the contract time. August 16th defendants decline payment for the balance of the clip on the grounds before given, and demand repayment of the $8,000 with interest.

We are of opinion that the defendants, by these declarations distinctly repudiated the contract from the first delivery. By their letters in May they assent to a conditional acceptance, that is, they say they will take that portion of the wool if they can agree upon a price, but will not take it under the contract. They base the refusal on the ground of non-compliance with the agreement as to quality, the only ground which could then be given, for the time "about May" had not expired to preclude plaintiff from fulfilling his contract in this respect. Their note of the 25th of June still adheres to the merely conditional acceptance, but on the 27th June they decline to receive *more* wool now and claim the non-compliance with the time of the contract. The word "more" has been held to import the acceptance of a part, but how was that part accepted? Clearly not accepted in pursuance of the contract, but taken conditionally, and to be bought if parties could come to terms. On the 27th, then, defendants say they will receive no more on this conditional arrangement of a price to

be settled in future. But if the defendants had made no objection on the ground of quality, to receiving the lot delivered in May, there remained to them their right to repudiate the contract for non-delivery of the whole when the time had passed for such delivery.

No proof was offered that they had waived stipulation as to time of delivery. They had refused to take it, and offered to return that which had been taken on the condition that another price could be agreed on. By the terms of the amended declaration the contract had not been executed. We are therefore of opinion that the defendants' motion for nonsuit on this ground was good. It would have been otherwise if based solely on questions resting in the discretion of the Court, such as the judgment of the Court as to sufficiency of testimony to go to the jury, a matter wherein the discretion of the Court is not to be reviewed by the Court in Banco.

The authority of Bowes *vs.* Shand, House of Lords Appeal Cases, Vol. 2, p. 455, was very much relied on by the defendants, and has had great weight with the Court. It is so recent a case, June 1877, and from such high authority and bearing on every day business transactions that we deem it well to state it briefly. The action was upon two contracts, each for 300 tons "*of Madras rice* to be shipped at *Madras* or coast for this port (London) during the months of March and April, 1874, per *Rajah of Cochin.*" Most of the 600 tons was put on board in the month of February. A bill of lading for the remaining 1,080 bags was given on the 3d of March, but all except fifty bags had been put on board before that day. In an action for refusing the rice, the defense was that it had not been shipped during the months of March and April, and the eminent Law Lords held that the contract had not been complied with. Says Lord Hatherly: "It is not the article rice only that is sold, but the thing that is sold is the article rice shipped in March or April, and the article rice shipped in February is not the article which has been purchased by the

Theo. H. Davies *v.* H. Hackfeld & Co.

defendants. The danger of rejecting the literal construction is extreme because it is impossible to know all the causes which may have induced the persons to put words into a contract. It appears to me that the defendants could not be obliged to accept a tender of the fifty bags separate and distinct from the complete contract they had entered into for the whole 300 tons, the large bulk of which was shipped in a different month from that which they had contracted for, and therefore was not of such a character as to be deliverable to them in fulfillment of the contract they had entered into."

The first exception of defendants being fully sustained, it will not be necessary to consider the others.

Let the defendants take judgment of nonsuit.

Honolulu, April 22, 1878.

OPINION OF HARRIS, C. J.

I gave my opinion upon this case very fully when it was before me on motion for a new trial.

As my brethren say in their opinion above, I held that the word "more" (used by the defendants in their letter of the 27th June) in the sentence, "We decline to receive 'more' wool now," implied the acceptance of that part of the wool which they had received before. Consequently I was unable to reach the conclusion which my brethren have arrived at, namely, that the defendants by their declaration contained in the letters above set forth distinctly repudiated the contract from the first delivery.

We are fully agreed upon all the principles which govern this case, and I can easily see that a different conclusion from mine might be reached, for it may reasonably be argued that when by their letter of August 16th, they demand back their money and interest on it—it is necessarily a tender back of the wool.

But I thought that the construction of the letters was a proper question to be left to the jury and they, by disregard-

ing all my instructions, left it impossible to be· determined what weight they gave this particular point.

E. Preston for plaintiff.

A. S. Hartwell for defendants.

Honolulu, April 22, 1878.